IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL KRAVAS and KATHY KRAVAS, <br>      Plaintiffs <br><br> vs. <br><br> PRIVATE ADOPTION SERVICES, INC., CAROLYN MUSSIO and TERRY MUSSIO, <br>      Defendants | Civil Action No. 08-1583 <br> Chief Magistrate Judge Amy Reynolds Hay |

**MEMORANDUM OPINION**

HAY, Chief Magistrate Judge

On October 11, 2008, the Plaintiffs, Michael and Kathy Kravas ("Plaintiffs"), prospective adoptive parents and Pennsylvania residents, filed suit in the Court of Common Pleas of Allegheny County, Pennsylvania against the Defendants, Private Adoption Services, Inc. ("PAS"), an Ohio corporation, its Executive Director, Carolyn Mussio, and a Social Worker employed by PAS, Terry Mussio (collectively, the "Defendants"). Asserting diversity of citizenship, the Defendants removed the matter to this Court where it has been pending for more than a year. The deadline for the close of discovery, originally set at October 30, 2009, was rescheduled to January 31, 2010 at the parties' joint request. The Court now considers the Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).[1] Having engaged in the weighing process mandated by the Court of Appeals for the Third Circuit in cases where transfer

---

[1] This section provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

pursuant to section 1404(a) is requested, the Court will grant the Motion and order that this matter be transferred to the District Court for the Southern District of Ohio.

**Background**

The Complaint in this matter (Doc.1) alleges defamation, fraud, negligent infliction of emotional distress, and breach of fiduciary duty in connection with a failed prospective adoption. The Plaintiffs, Allegheny County residents, allege that they learned from a friend that a pregnant woman residing in Ohio wished to place her baby for adoption. (Id. at ¶ 8). The Plaintiffs contacted and allegedly formed a relationship with this woman, receiving her commitment to place her baby with them. In order to effectuate the prospective adoption, the Plaintiffs engaged and paid money to the Defendants with the understanding that they would work on the Plaintiffs' behalf to arrange for and complete adoption proceedings. (Id. at ¶¶ 18, 19, 21). According to the Plaintiffs, immediately prior to the time set for transfer of the infant, the Defendants persuaded the birth mother that the Plaintiffs were not appropriate parents. (Id. at ¶¶ 42-44, 49,50). The Plaintiffs allege that as a result of the Defendants' actions, the infant was placed with another couple which paid PAS a fee in excess of that agreed to by the Plaintiffs. (Id. at ¶ 55).

In the pending Motion, the Defendants argue that considerations of convenience and justice favor transferring this matter to the District Court for the Southern District of Ohio. The Defendants bear the burden of establishing that transfer of venue is appropriate. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). In order for Section 1404(a) to apply, venue must be proper in the both the original and requested venues. Id. at 878. In the typical case, therefore, a Court evaluating a request for transfer of venue must determine whether venue lies in the district where suit was filed. Here, however, the Defendants do not contend that venue in the Western District of Pennsylvania is improper. Had this been their position, the motion for

transfer would have been based the provisions of 28 U.S.C.§1406(a)[2] rather than 28 U.S.C. §1404(a). The Court turns, therefore, to the other factors relevant to the section 1404(a) determination and the Defendant's analysis of those factors in the context of this case.

### The Analytical Framework

The purpose underlying section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). Though courts have broad discretion with respect to motions for transfer of venue, they are not to be granted liberally. Shutte v. ARMCO Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); Superior Precast Ins. v. Safeco Ins. Co. Of Am., 71 F. Supp.2d 438, 445 (E.D. Pa. 1999).

The Court of Appeals for the Third Circuit has identified a series of public and private considerations to be balanced in evaluating requests for transfer. Jumara, 55 F.3d at 879. The relevant private interests include: 1) the plaintiff's choice of forum; 2) the defendant's choice of forum; 3) where the claim arose; 4) the convenience of the parties as indicated by their relative physical and financial conditions; 5) the convenience of the witnesses, but only to the extent that they may actually be unavailable at trial; and 6) the location of relevant books and records insofar as these could not be produced in the alternative forum. Id. The public interests to be examined include: 1) enforceability of the judgment; 2) practical considerations that could make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the public policies of the fora; and 5) the judge's familiarity with the applicable state law. Id. at 879-80.

---

[2] This section reads: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The weight given to the factors set out in Jumara is not equal. A plaintiff's choice of forum is paramount. "[U]nless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." Owatonna Mfg. Co. v. Melroe Co., 301 F. Supp.1296, 1307 (D. Minn.1969). According to the Defendants, the private interests identified in Jumara justify overriding the Plaintiffs' forum choice.

The Defendants address first the private considerations cited in Jumara, stating that although the Plaintiffs reside in, suffered damages in, received communications in and planned to bring the baby to Pennsylvania, virtually every other aspect of this case supports transferring this matter to Ohio. Each of the tortious acts alleged occurred exclusively in Ohio. The Plaintiffs made contact with the birth mother and the Defendants in Ohio, and, through an Ohio agency, pursued an adoption, the terms of which were governed by Ohio law. The birth parents reside and the baby was born in Ohio. Aside from the Plaintiffs, the relevant individuals - including the birth parents, the adoption agency employees, and the hospital social worker with whom the birth mother allegedly discussed her reservations regarding the Plaintiffs - live in Ohio. (Doc. 30 at ¶ 14). According to the Defendants - and not disputed by the Plaintiffs - depositions of at least seven witnesses are scheduled to take place in or near Cincinnati. (Doc. 28 at ¶ 9).

The Defendants also contend, albeit without evidentiary support, that the birth parents, whose testimony is at the center of the Plaintiffs' claims, are unwilling to participate voluntarily in this matter, and are beyond this Court's subpoena power. Further, in a Motion for Protective Order (Doc. 31) filed concurrently with the Motion to Transfer, the Defendants explain that it will be extremely difficult to have both of the Mussios appear for depositions in Pittsburgh because the adoption agency is small, and one of the Mussios must be available at all times due to the ongoing and unpredictable demands of the adoption process. (Id. at ¶¶ 6-8). This issue

would be at least equally problematic should any trial take place in this district. In addition, the Defendants allege - again without evidentiary support - that the hospital social worker whose testimony is also critical to the resolution of this case would be unduly burdened by having to travel to Pittsburgh for trial, as she has a small child. Finally, the Defendants note that all relevant records are located in Ohio.

With respect to the public factors articulated in Jumara, the Defendants argue that Ohio's interest in the integrity of its adoption process trumps Pennsylvania's interest in the outcome of this case, and that the federal court in Ohio will be "better able to interpret the laws of the state in which it sits." (Doc. 30 at ¶ 19). They also contend that "[b]ecause all relevant acts occurred in the Southern District of Ohio, it is clear that the trial would be easier, more expeditious and inexpensive it were tried in the Southern District of Ohio." (Id. at ¶ 21).

**Discussion**

Having weighed the Jumara factors in light of the parties' arguments for and against transfer, the Court finds that considerations of convenience and justice favor granting the Defendants' motion. In reaching this decision, the Court is mindful of the deference to be granted to a plaintiff's choice of forum. Here, however, the Court is convinced that other relevant factors are sufficient to overcome that deference. The Plaintiffs, of course, wish to litigate where they reside and maintain a business. It is undeniable that litigating this matter in Ohio will be less convenient and more expensive for the Plaintiffs. It was the Plaintiffs, however, who voluntarily sought out the birth mother in Ohio, and hired an Ohio agency to carry out the adoption arrangement. They traveled to Ohio frequently during the period preceding and surrounding the time of the baby's birth, and have not demonstrated that their business was unable to function during periods of their absence.

While the Court understands that the Plaintiffs' interest in litigating in their home district is important, it recognizes, at the same time, that there are multiple non-frivolous grounds supporting transfer. Most important is the fact that none of the tortious activity alleged occurred in Pennsylvania.[3] None of the Defendants alleged to have committed those acts, nor witnesses thereto, resides in Pennsylvania. Also important is the fact that the individual Defendants have indicated that the need for their joint presence at trial in Pittsburgh will have a unique negative impact on their ability to manage their business - one involving ongoing and obviously unpredictable adoption matters.

The last of the Jumara private factors[4] - hardships that will allegedly be faced by multiple witnesses who might be unable or unwilling to travel to Pittsburgh - is of some, but not major relevance, because the Defendants have failed to identify these witnesses and have not explained why their testimony could not be secured via videotape. The Court finds that the private Jumara factors, when considered as a whole, tip only slightly in favor of granting the Defendants' motion.

---

[3] This is different from saying that the Defendants do not have minimum contacts with Pennsylvania for purposes of jurisdiction and proper - as opposed to convenient - venue.

[4] The location of relevant records does not contribute to the Court's decision regarding transfer. "The location of documents factor is neutral '[in] today's era of photocopying, fax machines and Federal Express.'" Aerotel Ltd. v. Sprint Corp., 100 F. Supp.2d 189, 197 n.2 (S.D.N.Y. 2000) (quoting Coker v. Bank of Am., 984 F. Supp. 757, 766 (S.D.N.Y. 1997)). The Court discounts, too, the fact that this case has been on the docket in the Western District for over a year. The length of time before bringing a § 1404(a) motion *is* to be considered. Campbell v. Mitsubishi Aircraft, Int'l, Inc., 416 F.Supp. 1225, 1226 (W.D. Pa.1976). The Court notes however that the case law is clear that delay in filing a motion for transfer of venue is not alone dispositive. See e.g., Martin-Trigona v. Meister, 668 F.Supp. 1, 3 (D.D.C.1987) (stating that "there is no time limit on when a section 1404(a) motion can be made"); Snam Progetti S.p.A. v. Lauro Lines, 387 F.Supp. 322, 323 (S.D.N.Y.1974) (holding that a motion to transfer under forum non conveniens "may be addressed to the discretion of the court at any time"). Here, much discovery remains to be conducted and transfer will not impede the orderly and efficient progress of the case.

While most of the Jumara public factors - the Courts' relative ability to assess and apply Ohio law, practical considerations that could affect the ease, timing and expense of trial,[5] the difficulty in enforcing a judgment in either jurisdiction, and the public policy of the two fora - are in equipoise, the Court finds that Ohio's interest in deciding this matter far outweighs the interest of Pennsylvania.  Although Pennsylvania undoubtedly has an interest in ensuring that its residents are protected from tortious adoption-related activity, Ohio has the same interest with respect to protecting its own citizens.  Ohio, though, also has a vital interest in protecting the integrity of the adoption process which is governed by that state's law.  Where the interest of a child is at stake, the state must exercise particular vigilance to ensure that each of the professionals associated with placement of that child acts for the benefit of the child and the prospective parents, and that the process is not tainted by monetary or other improper motivation. The Court is confident that Ohio's interest in the matter is substantial, tipping the Jumara public factor analysis decisively in favor of transfer.

**Conclusion**

Because the Court finds that the Defendants have met their burden of demonstrating that transfer of venue to the Southern District of Ohio will best serve the interests of justice and convenience,  the Motion for Transfer of Venue (Doc. 30) will be granted.  An appropriate Order follows.

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

---

[5]The Plaintiffs argue that the fact that the Southern District of Ohio has had approximately 700-800 more cases on its docket in relevant years than has the Western District of Pennsylvania, this statistic is of limited significance in the absence of data showing the number of District Judges and Magistrate Judges assigned to manage the relative dockets.

Dated:   22 December, 2009

cc: Counsel of record via CM-ECF